UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMINENCE INVESTORS, L.L.L.P., <br><br> Plaintiff, <br><br> v. <br><br> BANK OF NEW YORK MELLON, <br><br> Defendant. | Case No.: 1:13-cv-02025-AWI-MJS (PC) <br><br> **FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFFS' MOTION TO REMAND** <br><br> **(ECF No. 25)** <br><br> **OBJECTIONS DUE WITHIN THIRTY DAYS** |

I.  **INTRODUCTION AND PROCEDURAL HISTORY**

In this action Eminence Investors, L.L.L.P. and John Does ("Plaintiffs") seek to recover for Bank of New York Mellon's ("Defendant's") alleged breaches of duties it owed as the Indenture Trustee of bonds issued to fund the development of real property.

Apparently undisputed facts reflect that in 1996, the Jensen Ranch Public Financing Authority ("Financing Authority") issued $16 million in bonds to fund development of property in Madera County, California, owned by River Bend Ranches, L.P. The Financing Authority entered into an Indenture with Defendant's predecessor trustee obligating the trustee to perform specified functions in connection with the bonds. The Financing Authority loaned the

1

property owner the proceeds of the bonds and took as security a deed of trust on the real property. The Financing Authority then assigned the note and deed of trust to the Indenture Trustee as called for in the Indenture. Defendant later succeeded, and assumed the duties of, the original Indenture Trustee.

In 2001, River Bend Ranches, L.P. defaulted on the note and the Financing Authority defaulted under the terms of the Indenture. Plaintiff Eminence Investors, L.L.L.P. ("Plaintiff Eminence") subsequently purchased approximately 9.6% ($1,539,000 face value) of the outstanding bonds. On November 23, 2011, Plaintiff Eminence initiated this case against Defendant and two California residents in Madera County California Superior Court, Case No. MCV 058453. The Complaint identified Plaintiff Eminence as the "representative owner" of 25% of the outstanding bonds and sought in excess of $10,000,000 in damages for Defendant's alleged breach of fiduciary duties, negligence, unjust enrichment, and violation of California Business and Professions Code section 17200, all arising out of Defendant's role as Indenture Trustee.

On November 13, 2013, the Madera Superior Court entered an Order approving the parties' stipulation to Plaintiff Eminence's filing a First Amended Complaint. The First Amended Complaint added class allegations on behalf of more than 100 individuals each holding bonds having at least $5000 in face value.[1]

On December 10, 2013, within 30 days of the filing of the First Amended Complaint, Defendant removed the case to this Court alleging federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. Section 1446. (ECF No. 1.) On January 9, 2014, Plaintiffs filed this Motion to Remand the action back to the state Superior Court. (ECF No. 25.)

A hearing on the Remand motion was held February 7, 2014. The Court there requested supplemental briefing which Plaintiff filed February 21, 2014, and Defendant filed March 7, 2014. (ECF Nos. 50 & 51, respectively.) The parties then submitted unsolicited

---

[1] Paul Frederick and Mark Bragg were also named as Defendants in the First Amended Complaint. (ECF No. 1-2.) Defendants Paul Frederick and Mark Bragg were dismissed from the lawsuit on February 12, 2012 and August 23, 2012, respectively. (ECF No. 1.)

2

letter briefs addressing the Ninth Circuit Court of Appeals February 18, 2014, decision in <u>Rea v. Michaels Stores, Inc.</u>, 742 F.3d 1234 (9th Cir. 2014).

Plaintiffs' Motion for Remand now stands ready for decision.

## II. ISSUES PRESENTED

Plaintiffs do not appear to dispute that the diversity, numerosity, and amount in controversy requirements for removal have been met here.

Rather, Plaintiffs claim, first, that Defendant's removal of this case to Federal Court was untimely because it came more than thirty days after August 23, 2013, when for the first time there was complete diversity between the only remaining parties, Plaintiff Eminence, an Arkansas limited partnership, and Defendant, a New York corporation. According to Plaintiffs, Defendant therefor had only until September 22, 2013, to remove the case.

Defendant responds that Plaintiffs' November 13, 2013, First Amended Complaint so fundamentally altered the nature of the case as to provide a new basis for removal, and thereby started the thirty day time limit for removal running again.

Plaintiffs also claim that Defendant's removal under CAFA is misplaced because their claims arise out of Defendant's failure to perform as obligated under the Indenture Agreement and the statute specifically excludes from its coverage actions arising out of rights, duties and obligations related to or created by a security (such as the bonds here). 28 U.S.C. § 1332(d)(9)(C).

To this latter claim Defendant responds that Plaintiffs' claims arise solely out of common law and exist independently of, and indeed are wholly inconsistent with, the terms of the Indenture Agreement and thus do not fall within the securities exception.

## III. LAW REGARDING REMOVAL AND REMOVAL DEADLINES

The Class Action Fairness Act, 28 U.S.C. Section 1453 ("CAFA"), vests federal district courts with jurisdiction over actions with 100 or more putative class members, in excess of $5 million, exclusive of costs and interest, in controversy, and at least one class member as a citizen of a state other than defendant's, even if one or more plaintiffs and one or more defendants are citizens of the same state. <u>Washington v. Chimei Innolux Corp.</u>, 659 F.3d

1   842, 847 (9th Cir. 2011).  CAFA's objective appears to have been to curb perceived abuses
2   from the litigation of large multi-state class actions in state courts, it being believed that such
3   cases, which also often had significant interstate commerce and national policy implications,
4   were more properly litigated in federal court.  See MG Building Materials, Ltd. v. Paycheck,
5   Inc., 841 F. Supp. 2d 740, 743-744 (W.D.N.Y. 2012) (discussion of CAFA's legislative history
6   and apparent objective).  CAFA adopts the procedures for removal in the general statue, 28
7   U.S.C. § 1446, although it eliminates the general one year absolute limit on removal.  28
8   U.S.C. § 1453(b).

9   "'[A]ny civil action brought in a State court of which the district courts of the United
10  States have original jurisdiction, may be removed by the defendant . . . .'"  Franchise Tax Bd.
11  v. Constr. Laborers Vacation Trust, 463 U.S. 1, 7-8 (1983) (citation omitted); see also 28
12  U.S.C. § 1441.  However, federal courts are courts of limited jurisdiction.  See, e.g.,
13  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Accordingly, the
14  burden of establishing federal jurisdiction for purposes of removal is on the party seeking
15  removal, and the removal statute is strictly construed against removal jurisdiction.  See
16  Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); see also Gaus v. Miles, Inc.,
17  980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must be rejected if there is any doubt
18  as to the right of removal in the first instance."  Gaus, 980 F.2d at 566 (citations omitted).

19  As applicable here, Subpart b of 28 U.S.C. Section 1146 requires that notice of
20  removal be filed within 30 days of defendant's receipt of an initial pleading setting forth the
21  claim for relief upon which the action is proceeding or, if the case as stated in the initial
22  proceeding is not removable, within 30 days of defendant's receipt of an amended pleading,
23  order or other paper from which it first may be ascertained that the case is, or has become,
24  removable.  Failure to remove timely waives the right to remove.  Cantrell v. Great Republic,
25  Inc., 873 F. 2d 1249, 1256 (9th Cir. 1989).  The time to remove is limited to prevent a
26  defendant from waiting to see how things go in the state court before deciding whether to try
27  his luck in a federal forum and also to avoid the delay and waste involved in starting the case
28

over in a new court after substantial time and energy has been spent on litigating it in state court. Price v. Wyeth Holdings Corp., 505 F.3d 624, 631 (7th Cir. 2007) (citations omitted).

As will be discussed in more detail below, some courts, however, have recognized a judicially-created exception to the thirty day rule, under which the right to remove is said to have been revived when plaintiff's amended pleading so changes the nature of the action as to constitute a substantially new suit. Wilson v. Intercollegiate (Big Ten) Conference Athletic Association, 668 F.2d 962, 965 (7th Cir. 1982); see also Johnson v Heublein Inc., 227 F.3d 236, 241-44 (5th Cir. 2000) (affirming district court's use of the "revival exception" to validate an otherwise untimely removal.)

Since the parties here apparently agree that Defendant's removal of this case did not occur within the first thirty days after it became removable (i.e., when complete diversity became apparent upon dismissal of the California defendants), the Court first considers the law applicable to whether, in this jurisdiction, the filing of Plaintiff's First Amended Complaint revived Defendant's right to remove.

### IV.     LAW REGARDING "REVIVAL" OF THE RIGHT TO REMOVE

Defendant identifies MG Building Materials, Ltd. v. Paycheck, Inc., 841 F. Supp. 2d 740, 746 (W.D.N.Y. 2012) as a case in which an arguably similar amendment was found to have "revived" the thirty day period for removal. There plaintiffs, both of whom were Texas citizens, sued defendant, a New York citizen, in state court on breach of contract and related claims arising out of defendant's payroll administration contract with plaintiffs. The stated amount in controversy exceeded $100,000. The matter as originally filed in December 2008 was removable under 28 U.S.C. Sections 1332 and 1441(a), but defendant did not initially seek removal. Instead it filed a motion in state court to abate the action and compel arbitration in accordance with the terms of the contract between the parties.

Plaintiffs amended their action to allege that the arbitration provision was fraudulently induced. The court denied, without prejudice, the motion for arbitration and gave plaintiffs an opportunity to conduct discovery into the validity of the arbitration provision. Based on discovery, plaintiffs, on October 19, 2009, amended again to allege a broad scheme by

defendant to engage in a variety of fraudulent acts to gain excess fees and revenues from plaintiffs and other small to medium businesses across the country.

On March 19, 2010, plaintiffs filed a third amended complaint asserting, for the first time, class claims on behalf of "all Major Market Services clients" of defendant's service. It alleged essentially the same wrongs as had been alleged in the October 2009 second amended pleading.

Within 30 days of the filing of the third Amended claim, defendant removed the case under CAFA to the United States District Court for the Western District of Texas. That court then granted defendant's motion to transfer the case to the Western District of New York, and it was the latter court that first addressed the removal issue.

The district court noted the general rule that the right to remove is "irretrievably lost" if the defendant fails to remove within the Section 1446 time frame. MG Building Materials, 841 F. Supp 2d at 744 (citations omitted). The court cited to cases out of our circuit for the proposition that "[S]ubsequent events do not make [a case] 'more removable' or 'again removable.'" Id.; Aleksick v. 7-Eleven, Inc., No. 08 CV 59, 2008 WL 821854, at *83 (S.D. Cal. Mar. 25, 2008) (quoting Samura v Kaiser Found. Health Plan, Inc., 715 F. Supp. 970, 972 (N.D. Cal. 1989)).

Somewhat paradoxically, the court then went on to note the one narrow, judicially-created, exception to irretrievability, the "revival exception", which comes into play where an amendment to the pleading provides a "new basis" for removal or "changes the character of the litigation so as to make it substantially a new suit. MG Building Materials, 841 F. Supp. 2d at 744 (citing Braud v. Transport Serv. Co. of Illinois, 445 F.3d 801, 806 (5th Cir. 2006) (quoting 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3732 at 311-48)). The MG Building Material court paraphrased: a time-lapsed right to remove "can be 'revived' if the plaintiff amends the complaint, and in so doing **dramatically changes the essential character of the action**." Id. (emphasis added). Or, if the amendment 'fundamentally alters' the nature of the case to such an extent that it **creates 'an essentially new lawsuit**.'" Id. at 745 (citations omitted) (emphasis added). It added clarification from In

re Methyl Tertiary Butyl Ether Prod. Liab. Litig., No. 1:00-1898, 2006 WL 1004725, at *3 (S.D.N.Y. Apr. 17, 2006):  where the amendment does not change "the target of Plaintiff's attack, the basic legal theory of the case, or the  . . . nature of the relief sought" there is no revival; the converse is true where "newly added claims bear no resemblance to the original allegations". Id. at 745 (citations omitted).  The court summarized:  ". . . the essential question is whether the amended pleading can be said to give rise to what is, practically speaking, a 'new' lawsuit." Id.

      The court noted, too, the great practical difficulty in applying these tests to unique facts in unique cases. MG Building Materials, 841 F. Supp. 2d at 745.  But in doing so in the case before it, the Western District of New York concluded that the third amended complaint transformed a two-plaintiff case seeking less than $170,000 in damages into a class action with potentially thousands of class members and $15 billion in damages, increasing the damage claim by nine million percent! Id. at 746 and 748.  That, to the court, created an essentially new lawsuit and gave defendant a new opportunity to remove. Id. at 746.  The court seemed to suggest that there is little practical difference between whether the change was characterized as creating "a new basis for removal" or a "substantially new suit". Id. at 746, 747.  It did, however, find significance in the following:  1.  A change in the character of the claim from one raising defendant's failure to timely pay plaintiffs' taxes to a claim that defendant had knowingly and purposely engaged in a nationwide scheme to defraud its clients and convert their funds to its own use;  2. Revival of the right to remove would not confer upon defendant any "undeserved tactical advantage" for having waited around to see how it did in state court and then removing because it was not doing very well there; 3. Since so little litigation had occurred in the state court before removal, keeping the case in federal court would not involve delay or duplication;  4. Absence of intent to mislead defendant into not removing was not determinative where defendant was in fact led to believe that the case involved only two plaintiffs and less than $170,000 in damages and subsequent discovery led

to the substantially new and much larger case with thousands of possible claimants and billions in damages.[2] Id. at 748.

Plaintiffs here respond, first, that it is questionable whether the revival exception even exists in this circuit since the Ninth Circuit Court of Appeals, in Kuxhausen v BMW financial Services NA LLC, 707 F.3d. 1136 (9th Cir. 2013), affirmatively refrained from addressing its availability here.  In that case a plaintiff filed a state court class action complaint against defendant alleging that each of hundreds of BMW purchaser-financers from a specified BMW dealer had statutory damages of up to $1000 each ($5000 if senior citizens) and also were entitled to rescind their purchase contracts.  Defendant in that matter did not remove the action as originally pled.  More than thirty days after the initial filing, plaintiff amended and added a new class of plaintiffs made up of financing BMW purchasers in California who bought from any BMW dealer. Defendant promptly removed on the grounds that the number of purchases and amount of potential damages clearly met CAFA jurisdictional requirements. The District Court remanded on the basis of a finding that, in essence, defendant should have "done the math" and determined CAFA jurisdiction existed by analyzing the original pleading and its own records. The Ninth Circuit reversed.  It held that defendants have no duty to extrapolate, engage in guesswork, or delve into materials beyond the complaint to determine if federal court jurisdiction exists.  Since the original complaint did not affirmatively disclose federal jurisdiction, the thirty day time limit did not start to run until the first amended complaint was filed.  Removal within thirty days of the filing of the amended complaint thus was timely, and "revival" was not even in issue.  Thus, the Court's final paragraph noted that given its conclusion, "we have no occasion to decide whether to join other circuits in recognizing a "revival exception . . . ." Id. at 1142.

---

[2] The discussion of each of these factors as well as the court's acknowledgment of the difficulty determining whether there has been a "revival" would have been wholly unnecessary if, as Defendant suggests (ECF No. 38, at p. 6), the case stood for the principle that the transformation of an individual lawsuit into a class action alone justified application of the revival exception.

Dunn v. Gaiam, Inc., 166 F. Supp. 2d 1273 (C.D. Cal. 2001) questioned the wisdom of such a judicially-created exception given the strict construction courts must apply to removal statutes and considering that its originator, Wilson , 668 F. 2d 962, supra, did not apply it. Id. at 1279.³ (But of course subsequently-decided MG Building, supra, clearly adopted and applied the doctrine in the Western District of New York.) Dunn nevertheless addressed the merits of the revival claim based on an amendment which increased the number of claims and added a claim under the Racketeer Influenced and Corrupt Organizations Act. Observing that the amendment did not so dramatically change the alignment of the parties, the gravamen of the case (it remained at its core a contract action), or defendants' potential liability as to overcome defendant's initial waiver of removal, the court ordered remand. Id. at 1280.

Ramos-Arrizon v. JP Morgan Chase Bank, N.A., No. 12CV609 JLS (WMC), WL 3762455 (S.D. Cal. Aug. 28, 2012), tacitly recognizing the existence of a revival exception, refused to apply it where defendant removed within thirty days of CAFA claims first being added to a case that had previously been removable on other grounds. "[I]t is the date that the case itself first becomes removable – not the date on which it first becomes removable under CAFA – that governs." Id. at *5.

But, Defendant here refers us to Durham v. Lockheed Martin Corp., 445 F. 3d 1247 (9th Cir. 2006), where the Ninth Circuit, noting that a defendant has thirty days to remove a case on diversity or federal questions grounds, held that later discovery of "federal officer" grounds for removal created a new basis for removal. However, this holding clearly turned on the United States Supreme Court's mandate that when federal officers and their agents seek a federal forum, 28 U.S.C. Section 1442 is to be interpreted "broadly" and "generously" in favor of removal. Id. at 1251. This is of course contrary to the presumption against removal in other types of cases, including the one before this Court. In other than the federal

---

³ Ray v. Trim Spa Inc., No. CV 06-6189 AHM (VBK), 2006 U.S. Dist. LEXIS 97182, at *1 (C.D. Cal. November 20, 2006) similarly questioned the availability of a revival exception given the strict construction required in applying removal statutes.

officer removal situation: "When the defendant receives enough facts to remove on any basis under section 1441, the case is removable, and section 1446's thirty-day clock starts ticking. . . . [L]ater disclosure that the case is also removable on another ground under section 1441 doesn't help bring him into federal court." Id. at 1253.

## V. ANALYSIS REGARDING TIMELINESS OF REMOVAL

Analyzing that which may be discerned from the above array of cases does not produce any clear or succinct rule which might be applied to resolve the initial issues presented in this or, for that matter, any other case. However, considering the various factors discussed in the above cases and how they are applied in those cases, this Court is satisfied that their application here precludes recognition of a "revival exception" in this case (even if one is to be recognized in this circuit).

As noted, we begin with the very strong presumption against removal and the directive to reject federal jurisdiction if there is any doubt as to the right to removal. See Valdez v. Allstate Ins. Co., 372 F.3d at 1117; see also Gaus, 980 F.2d at 566. The burden is on the party seeking removal. See Valdez v. Allstate Ins. Co., 372 F.3d at 1117. Here, although all other CAFA prerequisites for removal have been conceded, Defendant's removal did not occur within the statutory thirty days of when the case became removable. The burden then fell on Defendant to establish that the right to remove was revived or renewed when Plaintiff amended to allege a CAFA claim. Although Defendant makes a noble, presumably good faith, and arguably justifiable argument in resisting remand, it does not really come close to convincing the Court that revival or renewal applies here.

Applying MG Building's criteria and its holding gives credence to Defendant's position, but does not persuade. The differences in the facts in the cases and in the changes from the initial pleading to the one on which removal was sought in each case render them profoundly distinguishable. In MG Building, the amended pleading increased the **number of putative Plaintiffs from two to thousands and the potential damages nine million percent** from less than $170,000 to $15 billion. Whether or not such a profound change might justify recognition of a revival exception in this jurisdiction, there is no such alteration here. The

10

essential nature of Plaintiffs' claims does not appear to have changed.  Plaintiffs, then and now, seek to recover for Defendant's alleged breaches of obligations which, according to Plaintiffs', were imposed on it under the indenture agreement.  As originally pled, Plaintiff Eminence was representing the holders of 25% of the outstanding bonds and seeking in excess of $10 million dollars in damages.  Nothing before the Court suggests any real change in the nature of the suit other than it may now be pursued on behalf of the holders of 100% of the bonds and consequently may increase the economic damages to the $16 million value of the bonds originally issued. There is a very close resemblance between the original and the amended claims.  The new pleading did not create an essentially new lawsuit.  Unlike in MG Building Materials, there has been no significant change in character of the claim here. MG Building Materials, 841 F. Supp. 2d at 748.  The change in pleading here is much more akin to the change in Dunn v. Gaiam, Inc., supra, which was found to be too inconsequential to overcome defendant's initial waiver of the removal option.

Further, in this case, there is no claim, much less evidence, that Plaintiffs acted with an intent to mislead Defendant, or that Plaintiffs even innocently and unintentionally lulled Defendant into remaining in state court until the thirty days passed.

Review of the exhibits to Defendant's notice of removal does not suggest that Defendant, having fared poorly in state court, is now seeking a tactical advantage by escaping to a hopefully more sympathetic court; indeed it appears Defendant did quite well at the hands of the superior court.  Nevertheless, those same exhibits reveal that an extensive amount of discovery and law and motion activity transpired in state court during this case's two year tenure there.  The parties did not address whether any of that would have to be redone if removal were permitted; probably not, but it certainly will not be redone if remand is ordered.

Defendant was not misled about the nature of the case and discovery did not lead to a substantially new and larger case as occurred in MG Building Materials.  And the Court sees no reason why it should give greater effect to the addition of CAFA claims here than the Southern District did in Ramos-Arrizon, supra.

Finally, the Court agrees with Plaintiff that the Ninth Circuit's holding in Durham is limited to its unique facts and, more importantly, to the law's unique treatment of federal officer claims and the special deference to federal jurisdiction mandated in such cases.[4]

The Court will recommend that Plaintiffs' motion be granted. Given this result, the Court need not and will not address the issue of whether the claims in this case fall within or without the "securities exception" to CAFA jurisdiction (28 U.S.C. § 1332 (d) (9) (C)).

## VI.   FEES AND COSTS

In addition to seeking remand, Plaintiffs move for an award of attorney fees and costs incurred in connection with this motion under 28 U.S.C. Section 1447(c). Though the statute does authorize such an award, the Supreme Court has held that they should not be awarded where the moving party had an objectively reasonable basis for removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). Given the vagaries of the "revival exception", the Court cannot say it was unreasonable for Defendant to seek its application here. The Court will recommend that Plaintiffs' request be denied.

## VI.   CONCLUSION AND RECOMMENDATION

In summary, the Court concludes that the relevant criteria do not support finding a revival or a renewal of the right to remove in this case. Defendant's removal notice came far more than thirty days after the right to remove was first apparent and waived, and it was untimely. The Court also finds that Plaintiffs are not entitled to an award of attorney fees and costs.

Accordingly, the Court HEREBY RECOMMENDS AS FOLLOWS:

1. That Plaintiffs' Motion to Remand be GRANTED and that this case be REMANDED to state court; and
2. That Plaintiffs' request for an award of costs and fees in this case be DENIED.

---

[4] Similarly, the Court finds no guidance in the holding in Rea v Michaels that the thirty days starts to run when the pleading for the first time on its face affirmatively reveals removability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 4, 2014                         /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE